UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.: 20-30134 (AMN) |
| MASSIMO V. CATAPANO, *Debtor* | : | Chapter 7 |
| | : | |
| | : | |
| | : | |
| THE CLUBHOUSE GROUP, LLC, *Plaintiff* | : | Adv. Pro. No. 20-03024 (AMN) |
| v. | : | |
| | : | |
| MASSIMO V. CATAPANO, *Defendant* | : | |
| | : | Re: AP-ECF Nos. 114, 123[1] |

## MEMORANDUM OF DECISION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART,
## AND ESTABLISHING SCHEDULE FOR FURTHER PROCEEDINGS

*Appearances*

Kirsten M. Schneider, Esq.                    *Counsel for plaintiff,*
Law Office of Kirsten Schneider, LLC          *The Clubhouse Group, LLC*
PO Box 339
Fairfield, CT 06824

Douglas J. Lewis, Esq.                        *Counsel for defendant,*
Evans & Lewis                                 *Massimo V. Catapano*
93 Greenwood Avenue
Bethel, CT 06801

---

[1]     Citations to the docket of this adversary proceeding number 20-03024 are noted by "AP-ECF No."
Citations to the underlying Chapter 7 case, case number 20-30134, are noted by "ECF No."

## I.    __INTRODUCTION__

Is recovery on Counts One through Twelve of the operative complaint barred by collateral estoppel or *res judicata*?[2]  This question is posed by the defendant's pending motion for summary judgment.  The parties paused the litigation schedule in this adversary proceeding to participate in binding arbitration that resulted in a final determination of the defendant's liability to the plaintiff on various contract theories and tort claims.  Having now returned to the bankruptcy court, the plaintiff objects to the defendant's motion for summary judgment as to most of the § 523(a) claims.   In doing so, the plaintiff ignores that it already had a full opportunity to prove its claims and another tribunal determined the liability issues between the parties.  The plaintiff alleges its various contract theories and tort claims against the defendant are non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(4) (fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny) or 523(a)(6) (willful and malicious injury by the debtor to another entity or to the property of another entity).  The plaintiff seeks a trial on the merits before the bankruptcy court on all claims except a minor breach of contract claim regarding a $99 computer keyboard, slander *per se* and tortious interference with contract (arguing those were determined by the arbitration and need not be considered).

## II.    __NATURE OF THE PROCEEDINGS__

In defending the pending motion for summary judgment, the plaintiff's counsel argues the bankruptcy court should hold a trial to determine the defendant's contract and tort liability.  But the liability portion of the parties' dispute was decided in a binding

---

[2] The plaintiff also seeks summary judgment on Count Thirteen due to the plaintiff citing an inapposite statute.

arbitration that resulted in a final, non-appealable decision.  The question driving the summary judgment motion here is whether the liability determined in the arbitration proceeding is non-dischargeable under § 523(a)(4) or § 523(a)(6).

This all began many years ago, when plaintiff The Clubhouse Group, LLC ("Clubhouse") employed defendant Massimo V. Catapano as a baseball coach and instructor pursuant to an employment agreement ("Agreement").  By November 2018, the defendant had stopped working for the plaintiff.  The plaintiff accused the defendant of breach of contract, interference with contract and business relations, and slander, among other things.  As required by the Agreement, the plaintiff commenced an arbitration proceeding against the defendant (the "Arbitration") to pursue its claims.[3]

On January 30, 2020 (the "Petition Date"), while the Arbitration was pending, the defendant filed a voluntary Chapter 7 bankruptcy petition, commencing case number 20-30134 (the "Main Case").[4]  The plaintiff timely filed a fourteen (14) count complaint commencing this adversary proceeding and objecting to the dischargeability of its claims pursuant to 11 U.S.C. §§ 523(a)(4) (fraud or false statement, embezzlement, or larceny), (a)(6) (willful and malicious injury), and (a)(19) (securities fraud or violations).  The plaintiff also objected to the defendant's Chapter 7 discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A) and (a)(4)(B) (fraud or false oath or account in or in connection with the Main Case).[5]

---

[3]    *The Clubhouse Group, LLC. v. Massimo Catapano, AAA Case No. 01-19-000-0367*.  The plaintiff also commenced – but then withdrew - a civil suit in state court to enjoin the defendant (the "Injunctive Action).  AP-ECF No. 137, p. 3.

[4]    ECF No. 1.

[5]    AP-ECF No. 1.  The Bankruptcy Code is found at Title 11, United States Code.  Unless otherwise specified, references to statute are to the Bankruptcy Code.

The plaintiff sought and received relief from the automatic stay to proceed with the Arbitration.[6]  An arbitrator issued a decision ("Arbitrator"; the "Arbitration Decision")[7] concluding the defendant had breached the Agreement, committed slander *per se* and tortiously interfered with plaintiff's other contracts.  The Arbitrator found little actual damage had occurred and imposed damages totaling $101.[8]  Important here, the Arbitrator also assessed attorney's fees of $36,575 against the defendant, bringing the total award to $36,676.00.[9]  Finally, the Arbitrator held a non-competition clause and a non-solicitation clause in the Agreement to be unenforceable.[10]

While the plaintiff could have sought to vacate or modify the Arbitration Decision, it did not do so.  Conn.Gen.Stat. §§ 52-418, 52-419.  Instead, the plaintiff sought and received a state court order affirming the Arbitration Decision (the "Affirming State Court Decision"), making it a final order of the state court.[11]

This Memorandum of Decision addresses the defendant's motion for summary judgment on Counts One through Thirteen of the Amended Complaint (the "Motion") in this adversary proceeding.  AP-ECF Nos. 114, 123; *see*, Fed.R.Bankr.P. 7056; Fed.R.Civ.P. 56; D.Conn.L.Civ.R. 56.  The plaintiff bears the burden of proof for a challenge to dischargeability of a debt and must meet each element under 11 U.S.C. §§ 523(a)(4) or (a)(6) by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

---

[6]     ECF No. 33.
[7]     AP-ECF No. 144-2, pp. 142-149.
[8]     Arbitration Decision, AP-ECF No. 144-2, p. 146.
[9]     Arbitration Decision, AP-ECF No. 144-2, p. 149.
[10]    Arbitration Decision, AP-ECF No. 144-2, pp. 145, 149.
[11]    *The Clubhouse Group, LLC V. Massimo Catapano*, Connecticut Superior Court, Docket No. FBT-CV-21-6105412-S, Docket No. 108 (Aug. 18, 2021, *Stevens, J.*).

The plaintiff's complaint is organized by the possibility each of its state-law based claims might be non-dischargeable under either Bankruptcy Code § 523(a)(4) or § 523(a)(6).  The claims are summarized in the following table.

| COUNT | CLAIM |
| --- | --- |
| One | 11 U.S.C. § 523(a)(4) Breach of covenant of good faith and fair dealing |
| Two | 11 U.S.C. § 523(a)(6) Breach of covenant of good faith and fair dealing |
| Three | 11 U.S.C. § 523(a)(4) Breach of fiduciary duty |
| Four | 11 U.S.C. § 523(a)(6) Breach of fiduciary duty |
| Five | 11 U.S.C. § 523(a)(4) Tortious Interference with Business Expectancies |
| Six | 11 U.S.C. § 523(a)(6) Tortious Interference with Business Expectancies |
| Seven | 11 U.S.C. § 523(a)(4) CUTSA Violation |
| Eight | 11 U.S.C. § 523(a)(6) CUTSA Violation |
| Nine | 11 U.S.C. § 523(a)(4) CUTPA Violation |
| Ten | 11 U.S.C. § 523(a)(6) CUTPA Violation |
| Eleven | 11 U.S.C. § 523(a)(6) Unjust Enrichment |
| Twelve | 11 U.S.C. § 523(a)(6) Defamation Libel Per Se |
| Thirteen | 11 U.S.C. § 523(a)(19) |
| Fourteen | 11 U.S.C. §§ 727(a)(4)(A) and (727(a)(4)(B) – Objections to Discharge |

At this summary judgment stage, the defendant must establish there is no genuine issue of material fact supporting the plaintiff's claims under 11 U.S.C. §§ 523(a)(4) or (a)(6) that would require a trial.  It is the defendant's job to identify the actual findings in the Arbitration Decision that it claims are entitled to preclusive effect, and to then map those findings onto the standard the bankruptcy court must use in

determining non-dischargeability pursuant to §§ 523(a)(4) or (a)(6).  The defendant argues that Counts One through Twelve of the Amended Complaint are barred by *res judicata* and collateral estoppel.[12]  Count Thirteen, the defendant argues, is brought pursuant to an inapplicable statute.[13]

To survive summary judgment, the plaintiff must bring forth evidence showing a fact that is material to the bankruptcy court's determination under §§ 523(a)(4) or 523(a)(6) is in dispute.  Here, the question of whether the defendant was "willful and malicious" within the meaning of § 523(a)(6) was unaddressed by the Arbitrator in his determination of slander *per se*, which is not surprising because such a determination is not required under Connecticut law.  Significantly, the plaintiff states (against its interest) that the three claims the defendant was held liable for in the Arbitration Decision are not before this court (the $99 keyboard breach of contract, slander *per se*, and tortious interference with contract) because they were fully adjudicated by the Arbitrator.  The plaintiff appears to misunderstand the posture of this adversary proceeding case.   The issue before this court is whether any portion of the liability determined by the Arbitration Decision is non-dischargeable.  *See,* Plaintiff's Memorandum, AP-ECF No. 14, pp. 6, 18.  While it is true liability for these three claims (and all other claims between the parties) was already determined by the Arbitrator, the question of non-dischargeability under bankruptcy law was not before the Arbitrator.

This Memorandum of Decision does not resolve Count Fourteen of the plaintiff's complaint, alleging the defendant should be deprived of a Chapter 7 discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A) and (a)(4)(B) (knowingly and fraudulently, in or in

---

[12]    AP-ECF No. 123.
[13]    AP-ECF No. 149, p. 4.

connection with the case (A) made a false oath or account; (B) presented or used a false claim).

The parties waived oral argument on the Motion.[14]  Having considered the record at this summary judgment stage and having construed the facts in the light most favorable to the non-moving plaintiff, the defendant's motion for summary judgment will be granted in part.  This Memorandum of Decision and Order explains the court's ruling.

Notwithstanding the plaintiff's statement it filed the Amended Complaint (ECF No. 114) to remove claims for breach of contract, slander *per se*, and tortious interference with contract, the record does not support that assertion.[15]

### III.    JURISDICTION AND VENUE; BURDEN OF PROOF

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b), and the United States District Court for the District of Connecticut's General Order of Reference dated September 21, 1984.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) (determinations of the dischargeability of particular debts).  The plaintiff and defendant consented to the bankruptcy court's entry of a final judgment in this adversary proceeding, subject to traditional rights of appeal.[16]  This adversary proceeding arises under the Main Case pending in this District and venue is proper pursuant to 28 U.S.C. § 1409.

This memorandum constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, applicable here pursuant to Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure.

---

[14]    AP-ECF No. 150, p. 2.
[15]    *See,* AP-ECF No. 114, ¶¶ 106-107; 157.
[16]    AP-ECF Nos. 154, 156.

## IV.   **FINDINGS OF FACT**

### a. **Local Rule 56(a) Statements**

Under District Court Local Rule 56(a)(1), made applicable here by Local Bankruptcy Rule 1001-1, a party submitting a summary judgment motion must file a "concise statement of each material fact" showing there is no genuine issue to be tried (the "56(a)(1) Statement").  D.Conn.L.Civ.R. 56(a)(1); D.Conn.Bankr.L.R.1001-1. District Court Local Rule 56(a)(2) requires the party opposing summary judgment to file a responding document stating whether each fact is admitted or denied (the "56(a)(2) Statement").  D.Conn.L.Civ.R. 56(a)(2).  Each material fact in a 56(a)(1) Statement supported by evidence will be admitted unless a fact is controverted or disputed by the 56(a)(2) Statement.  D.Conn.L.Civ.R. 56(a)(1).

Here, the plaintiff filed a Rule 56(a)(1) Statement.[17]  Rather than reply as contemplated by the District Court's local rule, the plaintiff objected to specific paragraphs of the Rule 56(a)(1) Statement while remaining silent as to the majority of the alleged material facts the defendant argues are undisputed.[18]  The plaintiff could have but did not include a separate section entitled "Additional Material Facts" setting forth any additional facts, not previously set forth in responding to the defendant's Local Rule 56(a)(1) Statement to establish a genuine issue of material fact precluding judgment in favor of the defendant.  *See,* D.Conn.L.Civ.R. 56(a)(2) and (3).  The plaintiff denied certain asserted facts by stating supplementary information rather than denying an asserted fact or proffering factual evidence to controvert it.[19]  Denying facts on this basis frustrates Local Rule 56(a)'s purpose of clarifying whether a genuine dispute of

---

[17]     AP-ECF No. 137.
[18]     AP-ECF No. 145.
[19]     *See*, AP-ECF No. 145, ¶¶ 7, 11, 13, 16 and 19.

material fact exists.  *Dingwell v. Cossette*, No. 3:17-CV-01531 (KAD), 2020 WL 5820363, at *3 n. 2 (D. Conn. Sept. 30, 2020); *Jackson v. Reed Smith LLP (In re Jackson)*, 630 B.R. 700, 709 (Bankr. D. Conn. 2021).

For example, the plaintiff disputes paragraph 7 of the defendant's Rule 56(a)(1) statement by quibbling about whether a termination of the Agreement in November 2018 was "[i]n and about the Fall of 2018."[20]  The plaintiff disputes paragraphs 11 and 19 but offers no evidence to refute them.[21]  The plaintiff objects to paragraph 13, arguing there is no evidence "the Arbitrator reviewed the claims, briefs, and exhibits of the parties' counsel, including any and all supporting affidavits."[22]  However, the Arbitration Decision itself states the Arbitrator, "reviewed the respective briefs and exhibits of the parties . . .."[23]  Regarding paragraph 16, the plaintiff appears to dispute the Arbitration Decision which this court has no power to review.[24]

Where the plaintiff failed to appropriately deny a material fact supported by evidence in the record, the fact is deemed admitted for purpose of summary judgment. *See, Toussaint v. Guadarma*, No. 3:21-CV-32 (MPS), 2022 WL 17716489, at *2 n.1 (D. Conn. Dec. 15, 2022).  Because the plaintiff failed to establish there is a genuine issue of material fact as to the defendants' allegations in ¶¶ 7, 11, 13, 16 and 19 of the defendant's 56(a)(1) Statement, the facts alleged in those paragraphs are admitted.[25]  All other undisputed facts set forth in the Rule 56(a)(1) statement are also admitted.

---

[20]    AP-ECF No. 145, p. 1.
[21]    AP-ECF No. 145, pp. 2-3.
[22]    AP-ECF No. 145, p. 2.
[23]    AP-ECF No. 144-2, p. 142.
[24]    AP-ECF No. 145, p. 2-3.
[25]    *See*, AP-ECF No. 137.

Separate and apart from the efficient process contemplated by the District Court's Local Rule 56, the plaintiff filed an affidavit and numerous exhibits with its opposition to the Motion, which the court reviewed.[26]

### b. **Further Findings of Fact**

At all relevant times, the plaintiff provided sports training to youth and adolescent baseball players.[27]  The plaintiff employed the defendant as a "Recruiting Coordinator, Instructor, and Team Manager."[28]  The defendant and the plaintiff entered into the Agreement effective October 9, 2017.[29]  Either party could have terminated the Agreement upon fourteen (14) days written notice.[30]  The Agreement also contained two provisions the parties contested during the Arbitration: (1) a non-solicitation clause effective during the term of the Agreement and for two years thereafter; and (2) a non-competition clause applied for two years after the termination of the Agreement, within a 30-mile radius from the plaintiff's business location.[31]  The Agreement required the parties to settle all disputes through arbitration.[32]

In the Fall of 2018, the parties terminated their contractual relationship.[33]  The plaintiff then pursued two forms of relief:  (1) injunctive relief in a state court civil action based on the non-competition clause and the non-solicitation clause;[34] and (2) money damages in an arbitration proceeding with the American Arbitration Association

---

[26]    Ap-ECF no. 144-2.  Note some exhibits, especially those apparently including text messages, are illegible.
[27]    AP-ECF No. 137, p. 1.
[28]    AP-ECF No. 137, p. 2.
[29]    AP-ECF No. 137, p. 2.
[30]    AP-ECF No. 137, p. 2.
[31]    AP-ECF No. 137, pp. 2-3.  Note, the Arbitrator determined these two clauses were unenforceable.  Arbitration Decision, AP-ECF No. 144-2, pp. 145, 149.
[32]    AP-ECF No. 137, p. 3; AP-ECF No. 144-2, p, 13.
[33]    AP-ECF No. 137, p. 3.
[34]    AP-ECF No. 137, p. 3.

("AAA").[35]  Both were stayed when the Main Case was filed, pursuant to Bankruptcy

Code § 362(a).  The plaintiff sought relief from stay arguing completion of the Arbitration

would, "result in a complete resolution of the issue of the debtor's liability to the

Plaintiff."[36]  In its arbitration complaint, the plaintiff alleged breach of contract, breach of

the covenant of good faith and fair dealing, breach of fiduciary duty, tortious interference

with contractual relations, tortious interference with business expectancies, violation of

the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. § 35-50 *et seq.*

("CUTSA"), violation of Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA"), unjust

enrichment, declaratory judgment, slander *per se*, and libel *per se*.[37]  The plaintiff

argues all claims arising from the Arbitration Decision are non-dischargeable in the Main

Case.[38]

　　　As noted, the Arbitrator held the non-competition and non-solicitation provisions

of the Agreement unenforceable in the Interim Arbitration Decision dated January 19,

2021.[39]  He also determined the defendant breached the Agreement by not returning

company property (a computer keyboard) after repeated requests to do so, and had

committed slander and tortious interference with a contractual relationship.[40]  The

Arbitrator stated he, "reviewed the respective briefs and exhibits of the parties . . .."[41]

The Arbitrator awarded the plaintiff $99 for the breach of contract (*i.e.,* for the

keyboard), $1 nominal damages for slander *per se*, and $1 nominal damages for

tortious interference with contractual relations.[42]  On March 15, 2021, the Arbitrator

---

[35]　　AP-ECF No. 137, p. 3; AP-ECF No. 144-2 pp. 22.
[36]　　ECF No. 13, p. 8.
[37]　　AP-ECF No. 123-2, p. 1.
[38]　　*See generally,* AP-ECF 114.
[39]　　Arbitration Decision, AP-ECF No. 144-2, pp. 145-46.
[40]　　Arbitration Decision, AP-ECF No. 144-2, pp. 145-46.
[41]　　Arbitration Decision, AP-ECF No. 144-2, p. 142.
[42]　　Arbitration Decision, AP-ECF No. 144-2, p. 146.

issued a Final Award, adding attorney's fees of $36,575.[43]  Importantly for this case, despite plaintiff's allegation that the defendant had breached a fiduciary duty to the plaintiff, the Arbitrator made no such finding.  The plaintiff did not allege embezzlement or larceny in the Arbitration, although it could have.  Nothing in the record at this summary judgment stage supports a finding of fact supporting an embezzlement or larceny claim.

The plaintiff then sought a court order confirming the Arbitration award, stating in its motion, "[t]he issues presented to the [A]rbitrator . . . were: breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, tortious interference with contractual relations, tortious interference with business expectancies, violation of [CUTSA], violation of [CUTPA], unjust enrichment, declaratory judgment, slander per se, and libel per se."[44]  The plaintiff stated in its motion, "[t]he arbitration submission was unrestricted, as the [A]rbitrator had the authority to decide all legal issues submitted."[45]  The plaintiff's application was granted, and the Connecticut Superior Court affirmed the Arbitration Decision on April 14, 2021.[46]

The plaintiff bears the burden of proof on its complaint and must establish each element of §§ 523(a)(4) and 523(a)(6) by a preponderance of the evidence.  The question at the summary judgment stage is whether there is a material question of fact requiring a trial.

---

[43]     Arbitration Decision, AP-ECF No. 144-2, p. 149.  Important to this decision, the Arbitrator assessed attorney's fees based on the defendant's liability for three claims.  Here, the court finds that one and perhaps two of those claims are non-dischargeable.  Accordingly, the reasonable attorney's fee for one or two of the three claims will need to be determined under § 523(a)(6).

[44]     AP-ECF No. 144-2, p. 152-53.

[45]     AP-ECF No. 144-2, p. 154

[46]     The Affirming State Court Decision; AP-ECF No. 144-2, p. 157.

## V.   **APPLICABLE LAW**

### a.  **Summary Judgment Standard**

At this summary judgment stage, the initial burden rests with the movant (here, the defendant) who must demonstrate no genuine issue of material fact exists and he is thus entitled to judgment as a matter of law. *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017); Fed.R.Civ.P. 56(a).  The moving party must provide "evidence on each element of its claim or defense," after which "the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12-CV-5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

A genuine issue of fact means a genuine issue of material fact. *See, Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 247-48 (1986) ("the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact"); accord, *Choi v. Tower Research Capital LLC,* 2 F.4th 10, 16 (2d Cir. 2021).  The governing law "applied to the case determines which facts are material" for purposes of deciding a summary judgment motion. *Every v. Makita U.S.A., Inc.,* No. 02 CIV. 8545 (GEL), 2005 WL 2757952, at *8 (S.D.N.Y. Oct. 24, 2005); accord *Anderson,* 477 U.S. 248.

Section 523(a)(6)'s "word 'willful' . . . modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury . . .*." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).  This means that "[f]or a debt to be non-

dischargeable as a willful and malicious injury, it must arise from an *intentional tort which is specifically intended* to injure the plaintiff." *Options Unlimited, Inc. v. McCann (In re McCann)*, 634 B.R. 207, 218 (Bankr. D. Conn. 2021) (emphasis added). "The Second Circuit Court of Appeals has often stated that "summary judgment is generally inappropriate where questions of intent and state of mind are implicated." *In re Dybowski*, No. 07-21152 (ASD), 2012 WL 1945503, at *15 (Bankr. D. Conn. May 30, 2012) (citing *Gelb v. Board of Elections of City of New York*, 224 F.3d 149, 157 (2d Cir. 2000)).

### b. *Res judicata* and Collateral Estoppel: Counts One through Twelve

The defendant argues the lion's share of the plaintiff's claims can be resolved through the application of *res judicata* or collateral estoppel. While similar, these legal theories are distinct.

> The doctrines of collateral estoppel and res judicata, also known as issue preclusion and claim preclusion, respectively, have been described as related ideas on a continuum. . .. Both doctrines share common purposes, namely, to protect the finality of judicial determinations, [to] conserve the time of the court, and [to] prevent wasteful litigation . . .. Despite their conceptual closeness . . . the two doctrines are regarded as distinct. . .. The doctrine of collateral estoppel prevents a party from relitigating issues and facts [that have been] actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them [on] a *different claim* . . . whereas the doctrine of res judicata prevents a party from relitigating the *same claim* following a final judgment on the merits, regardless of what additional or different evidence or legal theories might be advanced in support of it.

*Solon v. Slater*, 345 Conn. 794, 810, 287 A.3d 574, 586 (2023) (citations omitted; emphasis in original; internal quotation marks omitted).

*Res judicata* cannot form the basis for a decision of non-dischargeability. *Syncom Indus. v. Wood (In re Wood)*, 488 B.R. 265, 271 n.3 (Bankr. D. Conn. 2013); *Brown v. Felsen*, 442 U.S. 127, 138-39 (1979) (superseded by statute on other grounds). Conversely, "[i]t is well settled that preclusion principles apply in bankruptcy

14

proceedings . . . and that collateral estoppel may be used to establish the non-dischargeability of a debt . . .." *Murphy v. Snyder (In re Snyder)*, 939 F.3d 92, 100 (2d Cir. 2019) (citations omitted).  Here, the defendant argues the inverse, that collateral estoppel may establish a particular debt is dischargeable.

"When determining the preclusive effect of a state court judgment, a court must apply the preclusive law of the rendering state."  *Guardian Alarm Servs. v. Rossman (In re Rossman)*, Nos. 17-51160 (JAM), 18-05010 (JAM), 2019 WL 3330781 at *3.  "[O]rdinarily a factual determination made in final and binding arbitration is entitled to preclusive effect."  *Marques v. Allstate Ins. Co.*, 140 Conn. App. 335, 340 (2013) (internal quotation marks omitted).

> Collateral estoppel, or issue preclusion, is that aspect of *res judicata* which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. . .. For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action.  It also must have been actually decided and the decision must have been necessary to the judgment. . ..
>
> An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . ..  An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . ..  If an issue has been determined, but the judgment is not dependent [on] the determination of the issue, the parties may relitigate the issue in a subsequent action.  Findings on nonessential issues usually have the characteristics of dicta.

*Lighthouse Landings, Inc. v. Conn. Light & Power Co.*, 300 Conn. 325, 343-44, 15 A.3d 601, 613 (2011) (citations omitted; internal quotation marks omitted); *accord*, *In re McCann*, 634 B.R. at 215.

"An overlap in issues is not enough to trigger application of the doctrine of collateral estoppel; the doctrine becomes operative only if the issue decided in the prior proceeding and the issue presented in the subsequent proceeding are *identical*."  *Solon v. Slater*, 345 Conn. at 816 (emphasis in original).

While the plaintiff relies upon *Khandhar v. Elfenbein*, 943 F.2d 244 (2d Cir.1991) and *In Re: HS John LLC*, 585 B.R. 64 (2018) to argue the liability issues raised in the Amended Complaint were not actually litigated or determined by the Arbitration Decision, the procedural posture of each of those cases is distinguishable from this case.

Issue preclusion will apply only if, "it is quite clear that the elements have been met so that a party is not precluded from obtaining at least one full hearing on his or her claim.  The burden of showing the issues are identical and necessarily were decided in the prior action rests with the party seeking to apply issue preclusion while the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with the party opposing its application." *Latino Officers Ass'n v. City of New York*, 253 F. Supp. 2d 771, 783 (S.D.N.Y. 2003) (citations omitted; internal quotation marks omitted; footnotes omitted)(abrogated on other grounds by *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 293 (2005)).

### c.  <u>Count Thirteen – 11 U.S.C. § 523(a)(19)</u>

As to Count Thirteen, the defendant argues that § 523(a)(19) does not apply here because there is no allegation the parties' dispute involves the violation of federal or state securities laws or regulations, from fraud, deceit, or manipulation in connection with the purchase or sale of any security. *See,* 4 COLLIER ON BANKRUPTCY P. 523.27. Nothing here relates to the purchase or sale of any security.  Although the plaintiff was permitted the opportunity to move to amend the complaint, it did not do so.

### d.  <u>11 U.S.C. § 523(a)(4)(fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny)</u>

"[T]he Bankruptcy Code does not define 'fiduciary relationship.' . ..  In the seminal cases in which [the Connecticut Supreme Court] has recognized the existence of a

fiduciary relationship, the fiduciary was either in a dominant position, thereby creating a relationship of dependency, or was under a specific duty to act for the benefit of another." *In re McCann*, 634 B.R. at 217 (citations omitted; internal quotation marks omitted).

To prove embezzlement, a creditor must establish: (1) a debtor appropriated the subject funds for his own benefit; and (2) he did so with fraudulent intent or deceit. *3N Int'l, Inc. v. Carrano (In re Carrano)*, 530 B.R. 540, 558 (Bankr. D. Conn. 2015). "[T]o prove larceny, a creditor must show that the debtor wrongfully took property from the rightful owner with fraudulent intent to convert such property to [the debtor's] own use without the owner's consent." *Heritage Equities, LLC v. Newman (In re Newman)*, 588 B.R. 281, 297 (Bankr. D. Conn. 2018) (internal quotation marks omitted). "Larceny is the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner. As distinguished from embezzlement, the original taking of the property must be unlawful." *In re Newman*, 588 B.R. at 297 (quoting, 4 Collier on Bankruptcy P. 523.10 [2]).

### e. 11 U.S.C. § 523(a)(6)(willful and malicious injury by the debtor to another entity or to the property of another entity)

#### i. Willful and Malicious, Generally

The Supreme Court, in *Kawaauhau v. Geiger,* 523 U.S. 57, held a non-dischargeable debt under § 523(a)(6) requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Kawaauhau v. Geiger,* 523 U.S. at 59. Willfulness "includes conduct that the actor is substantially certain will cause injury." *Aldus Green Co. v. Mitchell (In re Mitchell)*, 227 B.R. 45, 51 (Bankr.S.D.N.Y. 1998).

> In addition, [t]he injury caused by the debtor must also be malicious, meaning wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will. . .. Malice may be implied by the acts and conduct of the debtor in the context of the surrounding circumstances . . . and will be found where the debtor has breached a duty to the plaintiff founded in contract, statute or tort law, willfully in the sense of acting with deliberate intent, in circumstances where it is evident that the conduct will cause injury to the plaintiff and under some aggravating circumstance . . ..

*In re Snyder*, 939 F.3d at 105 (citations omitted; internal quotation marks omitted).

"The 'willful and malicious' nature of the injury may be proved at trial from all the facts and circumstances."  *In re Marcella*, 463 B.R. 212, 219 (Bankr. D. Conn. 2011) (citing *Navistar Financial Corporation v. Stelluti (In re Stelluti)*, 94 F.3d 84, 88 (2d Cir.1996); accord, *Mater—Halco, Inc., v. Picard (In re Picard)*, 339 B.R. 542, 555 n. 11 (Bankr. D. Conn. 2006).  Courts within the Second Circuit view some conduct giving rise to certain causes of action as inherently malicious, such as malicious prosecution or assault.

> In other cases, malice may be easily deduced where the debtor's conduct giving rise to liability has no potential for economic gain or other benefit to the debtor, from which one could only conclude that the debtor's motivation must have been to inflict harm upon the creditor. However, in cases where a debtor seeks profit or some other benefit, the underlying conduct, however deplorable, would not give rise to liability under § 523(a)(6) in the absence of some additional, aggravating conduct on the part of the debtor of sufficient gravity to warrant an inference of actual malice under the Second Circuit decision in [*Stelluti*].

*Rescuecom Corp. v. Khafaga (In re Khafaga)*, 419 B.R. 539, 550 (Bankr. E.D.N.Y. 2009) (citations omitted; internal quotation marks omitted).

### ii.  Tortious Interference Under § 523(a)(6)

"Because a successful § 523(a)(6) claim must prove acts done with actual intent to cause injury, and a tortious interference claim under Connecticut law requires a demonstration of malice on the part of a defendant, the issue of tortious conduct in a tortious interference claim is identical to the issue of "willful and malicious" conduct in the context of a § 523(a)(6) claim."  *In re Rossman,*

2019 WL 3330781 at *5.  "The tortious element requires proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously."  *Robert S. Weiss and Assocs., Inc. v. Wiederlight*, 208 Conn. 525, 535, 546 A.2d 216 (1988) (internal quotation marks omitted). "The plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification."  *Landmark Inv. Grp. v. Calco Constr. & Dev. Co.*, 318 Conn. 847, 869, 124 A.3d 847 (2015).  The Arbitrator's conclusion the defendant had tortiously interfered with plaintiff's contracts required the determination the defendant had acted willfully and with malice.

### iii.  Libel and Slander Under § 523(a)(6)

A determination of slander *per se* under state law does not automatically preclude a bankruptcy court's consideration of whether it is non-dischargeable under § 523(a)(6).  "The intentional tort of libel meets the requirements of § 523(a)(6) for non-dischargeability when the debtor/author knows the published statements were false. Mere reckless disregard for the truth or falsity of the statement, which can support a libel verdict, is not willful and malicious injury for the purposes of § 523(a)(6)."  *Pagones v. Mason (In re Mason),* No. 95 B 41537 JLG, 1999 WL 58579, at *3 (Bankr. S.D.N.Y. Jan. 28, 1999).

When an utterance falsely charges a crime involving moral turpitude or to which an infamous penalty is attached, a claim for slander *per se* lies under Connecticut law. *Moriarty v. Lippe*, 162 Conn. 371, 383 (1972).  "Moral turpitude" involves an act of inherent baseness, vileness or depravity in the private and social duties which man does to his fellow man or to society in general, contrary to accepted rules of right and

duty between man and law.  *Moriarty*, 162 Conn. at 383.  The Arbitrator's conclusion the

defendant had committed slander *per se* did not require a determination the utterance

was willful and malicious as contemplated by § 523(a)(6).

### iv.  Breach of Contract Under § 523(a)(6)

A breach of contract is generally not one of the type of claims excepted from

discharge under 11 U.S.C. §523.  A knowing breach of contract does not satisfy the

malicious element of § 523(a)(6) absent some aggravating circumstance evidencing

conduct so reprehensible as to warrant denial of the fresh start to which the honest but

unfortunate debtor would normally be entitled under the Bankruptcy Code.  *The*

*McFeely Limited Partnership v. Dilworth (In re Dilworth)*, No. 18-31552 (AMN), 2022 WL

987044, at *20 (Bankr. D. Conn. Mar. 31, 2022).  Whether circumstances are sufficiently

aggravating to support a finding of malice is a fact-specific determination made on a

case-by-case basis.  *Wu v. Lin (In re Qiao Lin)*, 576 B.R. 32, 43 (Bankr. E.D.N.Y. 2017).

A court should look to the totality of the circumstances to determine malice.  *Kerin*

*Enters. Holding Co. v. Marklin (In re Marklin),* 2023 WL 6306786 at *9, 2023 Bankr.

LEXIS 2373, at *24 (Bankr. E.D.N.Y. Sep. 27, 2023) (citing *Forrest v. Bressler (In re*

*Bressler)*, 387 B.R. 446, 455 (Bankr. S.D.N.Y. 2008)).

Although the fact finder – here the Arbitrator – did not find the debtor's breach of

the Agreement to be willful and malicious, that is not outcome determinative on the

issue of dischargeability pursuant to section 523(a)(6).  It is well-settled that it is within

the exclusive purview of the bankruptcy court to decide whether a debt is dischargeable.

*Brown v. Felsen*, 442 U.S. 127; *Rupert v. Krautheimer (In re Krautheimer)*, 241 B.R.

330, 335 (Bankr. S.D.N.Y. 1999) (a finding of breach of contract, in itself, has no

bearing on whether there is willful and malicious injury under § 523(a)(6)). However, the

Arbitrator's finding that the breach consisted of failing to return a keyboard limits the bankruptcy court's inquiry.

### f.  Attorney's Fees Under §§ 523(a)(4) and 523(a)(6)

Attorney's fees are non-dischargeable when they arise from conduct in violation of section 523(a)(4) and 523(a)(6).  "[A]ny liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor is nondischargeable under § 523(a)(2). . . . Courts have interpreted this holding to apply to nondischargeable claims under § 523(a)(4) and (a)(6) as well." *In re Smallwood,* No. 20-42708-NHL, 2021 WL 4465560, at *12 (Bankr. E.D.N.Y. Sept. 28, 2021) (citing *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998)).

### VI.    DISCUSSION

Based on this record the court concludes issue preclusion prevents review of most of the claims asserted in the complaint.  Three claims do remain after the Arbitration Decision:  breach of contract regarding retention of a $99 keyboard, slander *per se,* and tortious interference with contract.

### a.  Scope of the Bankruptcy Court's Determination

This court granted relief from stay so the plaintiff could pursue arbitration.[47]  The plaintiff stated, in its Motion for Relief from Stay, "permitting the Superior Court and AAA actions to go forward will result in a complete resolution of the issue of the debtor's liability to the Plaintiff".[48]  After the Arbitrator issued his decision, the plaintiff could have sought to vacate or modify the decision.  Instead, the plaintiff sought to have the award

---

[47]      ECF No. 13, p. 8.
[48]      ECF No. 13, p. 8.

affirmed by the Connecticut Superior Court.[49]  In its Memorandum of Law in Support of

Plaintiff's Application for Order to Confirm Arbitration Award, the plaintiff stated,

> The issues presented to the arbitrator (and the legal claims presented in
> the verified complaint) were: breach of contract, breach of the covenant of
> good faith and fair dealing, breach of fiduciary duty, tortious interference
> with contractual relations, tortious interference with business
> expectancies, violation of the Connecticut Uniform Trade Secrets Act §
> 35-50 et seq. violation of Conn. Gen. Statute § 42-110 et seq., unjust
> enrichment, declaratory judgment, slander per se, and libel per se.[50]

The plaintiff also stated, "The Award conforms to issues submitted. The arbitration

submission was unrestricted, as the arbitrator had the authority to decide all legal issues

submitted."[51]   The state court did as the plaintiff asked, rendering the Arbitration

Decision a final determination of the defendant's liability.

Now, the plaintiff defends against summary judgment by arguing it should be

able to relitigate the claims it lost.  The plaintiff purports to withdraw the liability claims in

this proceeding because they were fully adjudicated: "Those three claims, because they

were fully adjudicated, *are not before this Court.*"[52]  Apparently, there is a

misunderstanding.

The resolution of any claim that was submitted to the Arbitrator, fully and fairly

litigated, actually decided, and necessary to the judgment is unreviewable by this court.

*See, Lighthouse Landings, Inc. v. Conn. Light & Power Co.*, 300 Conn. at 343-44.  The

plaintiff sought a complete resolution,[53] stated it had received one,[54] and did not appeal

the Arbitration Decision in any proper forum.  It cannot use this court as a forum to

---

[49]    The Affirming State Court Decision.
[50]    The Affirming State Court Decision, ECF No. 105, p. 2.
[51]    The Affirming State Court Decision, ECF No. 105 p. 3 (emphasis added).
[52]    AP-ECF No. 144, p. 18.
[53]    ECF No. 13, p. 8.
[54]    The Affirming State Court Decision, ECF No. 105 p. 3.

relitigate the issue of liability brought before the Arbitrator simply because it is unhappy with the outcome.

### b. <u>Slander *Per Se* – Determination of Willful and Malicious Under § 523(a)(6)</u>

It appears the Arbitrator did not consider or determine whether the defendant's slander *per se* was willful and malicious as required by § 523(a)(6), which is not surprising because he was not required to make that finding under state law.  For that reason, the court must hold an evidentiary hearing as to that limited issue in order to determine whether the slander *per se* claim is non-dischargeable.  Should the bankruptcy court determine the slander *per se* claim is non-dischargeable, the amount of reasonable attorney's fees attributable to that liability would also need to be determined and would be non-dischargeable.

### c. <u>Tortious Interference with Contract – Defendant Collaterally Estopped</u>

Because malice on the part of a defendant is an element of a tortious interference claim under Connecticut law the issue of tortious conduct in a tortious interference claim is identical to the issue of "willful and malicious" conduct in the context of a § 523(a)(6) claim.  *In re Rossman,* 2019 WL 3330781, at *5.  For that reason, the defendant cannot prevail at the summary judgment stage as to that claim under § 523(a)(6).  The Arbitration Decision clearly found the defendant liable for tortious interference and so the defendant will be precluded under principles of collateral estoppel from disputing the facts found by the Arbitrator in reaching that determination. The only issue remaining for the bankruptcy court to decide on the tortious interference claim is the amount of reasonable attorney's fees attributable to the claim.

#### d. **Breach of Contract –** *De minimis* **and Abandoned**

The Arbitrator found the defendant breached the agreement by retaining a wireless keyboard worth $99.  "A breach of contract, alone, without some independent tortious conduct, does not generally satisfy Section 523(a)(6)." *Salim v. VW Credit*, Inc., 577 B.R. 615, 626 (E.D.N.Y. 2017). The claim is *de minimis*. The Arbitrator did not find, nor does the plaintiff argue, that the retention of the keyboard was done with malice. Nothing in the record supports a finding of malice regarding the retention of the keyboard.  The claim on the breach of contract by retaining a keyboard is therefore dischargeable because the plaintiff did not identify a material fact in dispute regarding this claim.

#### e. **Plaintiff's Other Claims Are Collaterally Estopped**

##### i. **Plaintiff's Claims Pursuant to Bankruptcy Code § 523(a)(4) Fail**

As noted, the factual determinations made in the final and binding Arbitration Decision between the parties are entitled to preclusive effect here.  The Arbitrator's findings do not support a conclusion the defendant committed fraud or defalcation while acting in a fiduciary capacity, embezzled or committed larceny, as contemplated by § 523(a)(4).  To the contrary, the Arbitration encompassed the entirety of the parties' dispute and yet the Arbitration Decision does not include any finding of material fact or legal conclusion suggesting that the defendant's conduct met any of the elements to support a breach of fiduciary duty.  No fact in the record here supports an embezzlement or larceny claim.  Nor do the facts in the Arbitration Decision support a conclusion the defendant held any fiduciary capacity, embezzled, or committed larceny. Similarly, plaintiff's claims based on a breach of a covenant of good faith and fair dealing, CUTSA, and CUTPA, and unjust enrichment were rejected.  As a result, the

plaintiff is estopped from proceeding on these claims here.  The Counts grounded in §
523(a)(4) therefore fail.

### f.  Count Thirteen Fails

Count Thirteen is brought pursuant to a wholly inapplicable statute.  Bankruptcy
Code § 523(a)(19) applies only to actions involving securities.  The plaintiff admits
pleading under that section was an "inadvertent mistake."[55]  The plaintiff asked the court
for leave to amend its complaint in order to state the proper legal theory it sought to
pursue in its summary judgment memorandum rather than by motion.[56]

Because the federal pleading rules call for a short and plain statement of the
claim showing that the pleader is entitled to relief, they do not countenance dismissal or
entry of summary judgment because of an imperfect statement of the legal theory
supporting the claim asserted.  *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).
Here, the court set a deadline after the pending motion was briefed to permit the plaintiff
to file a motion seeking to amend its complaint as to the statement of the legal theory in
Count Thirteen, but no motion was filed.[57]  Because Bankruptcy Code § 523(a)(19)
applies to securities violations and does not apply here, the defendant's Motion will be
granted as to Count Thirteen.  *See,* 4 COLLIER ON BANKRUPTCY P 523.27.

Even if the court were to consider Count Thirteen as having been pled using a
correct statutory reference, the result would be the same as the outcome announced
regarding Counts One through Twelve.

---

[55]     AP-ECF No. 144, p. 19.
[56]     AP-ECF No. 144, p. 19.
[57]     AP-ECF No. 155, p. 3.

VII.    **Conclusion**

The plaintiff appears to misunderstand the effect of the arbitration on Counts One through Twelve of the pending complaint.  Pursuing Counts One, Two, Three, Four, Five, Seven, Eight, Nine, Ten, or Eleven is frivolous at this stage because the plaintiff had a full and fair opportunity before the Arbitrator to establish liability under the theories stated in those Counts and failed to do so.  The plaintiff was clear with both this court and the state court that the Arbitration Decision resolved all issues of liability owed by the defendant to the plaintiff.  The Arbitration Decision therefore precludes further review on those Counts.  Count Thirteen is not viable as it is premised on an inapplicable section of the Bankruptcy Code.

While the allegations in Counts Six and Twelve could be more clearly tailored to the Arbitration Decision's liability determinations regarding slander *per se* and tortious interference with contract, the defendant's liability for tortious interference with contract appears non-dischargeable with damages totaling $1.00 plus reasonable attorney's fees related to that claim.  The defendant's liability for slander *per se* with damages totaling $1.00 plus reasonable attorney's fees related to that claim might be non-dischargeable if the plaintiff can establish the conduct (saying to another, "Porzio gives steroids to kids"[58]) was willful and malicious within the meaning of § 523(a)(6).

The defendant is entitled to summary judgment as to the contract claim totaling $99 for a computer keyboard, and the claim is dischargeable.

A trial will be scheduled to consider whether the plaintiff can establish the defendant's slander *per se* was willful and malicious under § 523(a)(6) and to hear evidence regarding Count Fourteen of the Amended Complaint (objections to discharge

---

[58]     AP-ECF No. 144-2, p. 145-146.

under §§ 727(a)(4)(A) and (a)(4)(B) (fraud or false oath or account in or in connection with the Main Case)).

A reasonable attorney's fee will be determined once these issues have been decided.  The plaintiff is cautioned the pursuit of many of the claims presented by the complaint appears to lack a good faith foundation in fact and law.  The court and undoubtedly the defendant has spent time addressing Counts One, Two, Three, Four, Five, Seven, Eight, Nine, Ten, and Eleven of the complaint when it appears there was no viable basis for the plaintiff to pursue those claims once the Arbitration Decision determined there was no liability under those legal theories.  Any attorney's fee allowance will take this into account.

All other arguments have been considered and determined to be without merit.

For these reasons, it is hereby

ORDERED: The defendant's Motion for Summary Judgment, AP-ECF No. 123, is GRANTED IN PART as to Counts One, Two, Three, Four, Five, Seven, Eight, Nine, Ten, Eleven and Thirteen of the Amended Complaint filed as AP-ECF No. 114; and it is further

ORDERED:  The defendant's Motion for Summary Judgment, AP-ECF No. 123, is DENIED as to Counts Six and Twelve of the Amended Complaint filed as AP-ECF No. 114; and it is further

ORDERED:  A separate Scheduling Order shall enter establishing pre-trial deadlines regarding (1) whether the defendant's slander *per se* was willful and malicious; (2) the reasonable attorney's fees attributable to the defendant's liability (if any) for slander *per se* and the defendant's liability for tortious interference with contract; and (3) the allegations of Count 14.

Dated this 27th day of February, 2024, at New Haven, Connecticut.

Ann M. Nevins
Chief United States Bankruptcy Judge
District of Connecticut